# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 15th day of February, two thousand eleven.

PRESENT:
> José A. Cabranes,
> Robert D. Sack,
> Richard C. Wesley,
> > *Circuit Judges.*

---

In re Roy R. Kulcsar,

> Attorney.

07-9020-am

**ORDER OF
GRIEVANCE PANEL**

---

For Roy R. Kulcsar:        Jeffrey C. Hoffman, Esq., New York, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the report of this Court's Committee on Admissions and Grievances ("the Committee") is adopted, as supplemented below, and Roy R. Kulcsar is PUBLICLY REPRIMANDED, SUSPENDED from practice before this Court for a period of six months, and

thereafter BARRED for an additional one-year period from representing litigants in this Court pursuant to the Criminal Justice Act ("CJA"), based on both the misconduct described in the Committee's report and the additional misconduct discussed below.

## I. Summary of Proceedings

By orders filed in May 2007 and March 2008, this Court referred Kulcsar to the Committee for investigation of the matters described in those orders and preparation of a report on whether he should be subject to disciplinary or other corrective measures. During the Committee's proceedings, Kulcsar had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at a hearing held in November 2008. Kulcsar was represented during the Committee's proceedings by Jeffrey C. Hoffman, Esq. Presiding over the hearing were Committee members Paul C. Curnin, Esq., Eileen M. Blackwood, Esq., and Terrence M. Connors, Esq. In March 2010, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations. Thereafter, the Court provided Kulcsar with a copy of the Committee's report, and Kulcsar responded.

In its report, the Committee concluded that there was clear and convincing evidence that Kulcsar had engaged in conduct warranting the imposition of discipline. See Report at 14-16. Specifically, the Committee found that Kulcsar had: (1) failed to comply with this Court's briefing deadlines, resulting in the

2

dismissal of five criminal appeals;[1] (2) failed to respond to this Court's communications on numerous occasions; (3) repeatedly sought extensions of time in violation of his duty of diligence, and still filed untimely briefs; and (4) violated this Court's CJA rules requiring counsel to continue his representation until granted leave to withdraw and prohibiting CJA counsel from delegating tasks to non-employees. *Id.* at 14-15. After noting various aggravating and mitigating factors, *id.* at 15-16, the Committee recommended that Kulcsar be publicly reprimanded and directed to provide the Court with a telephone number and mailing address by which he can be readily contacted and to submit periodic reports to the Committee, *id.* at 16-17.

In his response to the Committee's report, Kulcsar accepted the Committee's recommendations, apologized for his misconduct, and stated that he has taken corrective measures to facilitate timely communication with Court personnel. Response at 1-2.

---

[1] On page 14 of the report, the Committee identified *United States v. Narvaez (Gamboa)*, 03-1786-cr, as a sixth case that was dismissed as a result of Kulcsar's default. *See* Report at 14. However, as accurately reflected elsewhere in the report, *id.* at 2, 9-10, Kulcsar's misconduct in *Gamboa* did not result in the dismissal of the appeal. Instead, after Kulcsar defaulted on numerous Court deadlines and failed to respond to a number of messages left by Court employees, this Court denied Kulcsar's untimely *Anders* motion for failure to give his client proper notice of the motion, relieved him as counsel, denied him CJA fees, and appointed new counsel. *See Gamboa*, 03-1786-cr, order filed Aug. 15, 2006. Kulcsar was CJA counsel in at least three other appeals at issue in this proceeding. *See* cases docketed under 03-1751, 01-1344, 96-1514.

## II. Additional Relevant Conduct

### A. Conduct in this Court

During the Committee's proceedings, Kulcsar repeatedly assured the Committee that he had altered his practice to ensure that the conduct at issue would not recur. Letter from Kulcsar to Committee, dated June 30, 2008 (Record at Tab 1, item 9) at 3-4, 13; Nov. 18, 2008 transcript (Record at Tab 2) at 135-38; Letter from Kulcsar's counsel to Committee, dated Feb. 4, 2009 (Record at Tab 3, item 5) at 1-2. However, review of this Court's docket indicates that, since the date of his referral to the Committee, additional defaults by Kulcsar have resulted in the dismissal of two more criminal appeals, which have not been reinstated, and his continued inattention to this Court's deadlines, rules, and communications have delayed other appeals:

1. In *United States v. Rios (Bautista)*, 08-2223-cr(L), Kulcsar's client appealed from an order denying his 18 U.S.C. § 3582(c)(2) motion seeking correction of his sentence of 240 months imprisonment. *See Bautista*, 08-2223-cr, notice of appeal and dist. court docket sheet filed Apr. 30, 2008. After this Court granted Kulcsar's late motion for an extension of the briefing deadline, *see id.*, order filed Nov. 14, 2008, he nonetheless failed to file the brief. Over two months later, Kulcsar was ordered to show cause why the appeal should not be dismissed due to his failure to file the brief. *See id.*, order filed Jan. 26,

4

2009. Kulcsar did not respond, and the appeal was dismissed based on his default. *See id.*, order filed Feb. 25, 2009. Kulcsar has not moved for reinstatement.

**2.** In *United States v. Ramirez*, 09-1555-cr, Kulcsar's client appealed from a judgment sentencing him to, *inter alia*, 70 months imprisonment. *See Ramirez*, 09-1555-cr, notice of appeal and dist. court docket sheet filed Apr. 15, 2009. In July 2009, Kulcsar was granted an extension of time to file a motion to proceed *in forma pauperis* ("IFP"), *see id.*, order filed July 8, 2009, after he had informed this Court's motions staff attorney that he "has the financial affidavit and will send it to the Court ASAP," *id.*, entry dated June 25, 2009. However, Kulcsar never filed the IFP motion or paid the filing fee, causing the appeal to be dismissed. *See id.*, order filed Sept. 2, 2009. Kulcsar has not moved for reinstatement.

We further note that, in July 2009, Kulcsar's client in *Ramirez* sent a *pro se* letter to the Clerk of Court, inquiring as to the status of the appeal and whether appellate counsel had been appointed, suggesting that Kulcsar may not have consulted with his client up to that point. *See id.*, *pro se* letter docketed July 24, 2009. That letter was forwarded to Kulcsar, *id.* (entry stating, "*pro se* letter sent to attorney"), but the docket reflects no further activity until the default dismissal over one month later.

**3.** In *United States v. Santana*, 08-3871-cr, Kulcsar's client

5

appealed from a judgment sentencing him to, *inter alia*, 121 months imprisonment. *See Santana*, 08-3871-cr, notice of appeal and dist. court docket sheet filed Aug. 6, 2008. After having had one untimely extension motion granted, *see id.*, order filed Nov. 13, 2008, Kulcsar moved for another extension of time and to be relieved as counsel, *see id.*, motion filed Jan. 8, 2009. This Court denied the motion to be relieved, without prejudice to renewal upon a showing of compliance with Local Rule 4(b) and service of the motion on his client. *Id.*, order filed Feb. 3, 2009. Over the course of the following year, the Clerk's Office contacted, or attempted to contact, Kulcsar at least six times. *Id.*, entries dated Apr. 8, 2009, June 16, 2009 (suggesting two attempts), Aug. 13, 2009, Aug. 31, 2009, Feb. 11, 2010, March 2, 2010. On at least three occasions, the Clerk's Office was unable to leave Kulcsar a message because his voice mailbox was full. *Id.*, entries dated June 16, 2009, Feb. 11, 2010, March 2, 2010. In March 2010, this Court warned Kulcsar that he would be referred to the Grievance Panel unless he filed his brief. *Id.*, order filed March 3, 2010. Kulcsar then moved to be relieved, which was granted. *Id.*, order filed Apr. 14, 2010.

**4.** In *United States v. Olaiya*, 10-565-cr, Kulcsar's client appealed from a judgment sentencing him to, *inter alia*, 87 months imprisonment. *See Olaiya*, 10-565-cr, notice of appeal and dist. court docket sheet filed Feb. 18, 2010. Kulcsar was warned that

6

the appeal would be dismissed if he failed to either pay the filing fee or move for IFP status by June 4, 2010. *See id.*, order filed May 21, 2010. According to Kulcsar, on June 4, 2010, he hand-delivered to the Court his client's financial affidavit and motions to proceed IFP, for an extension of time, to be relieved as counsel, and for appointment of CJA counsel, but was not informed until three weeks later that the motions had been rejected because they had not been filed electronically. *See id.*, motion filed Aug. 19, 2010, at ¶¶ 3-5 and exh. A. By order filed June 28, 2010, the appeal was dismissed based on Kulcsar's failure to either pay the filing fee or file an IFP motion. *See id.*, order filed June 28, 2010. Kulcsar's subsequent motion for reinstatement was granted, *id.*, order filed Aug. 25, 2010, as was his motion to be relieved as counsel, *id.*, order filed Dec. 7, 2010.

Kulcsar did not explain why, prior to the submission of his June 4, 2010 motions in *Olaiya*, he was not familiar with this Court's local rule requiring electronic filing, which had become effective January 1, 2010, *see* Second Cir. Local Rule 25.1, or why he took the risk of waiting until the final day to file those motions.

It is possible that Kulcsar's conduct in one or more of the preceding four cases resulted from his client's decision not to proceed with the appeal, or Kulcsar's decision not to proceed as

7

counsel to the appellant. However, an appellant's counsel of record who determines either that the appeal will not proceed for any reason, or that counsel will no longer represent the appellant, is required to inform the Court of the situation and seek to either withdraw the appeal or withdraw as counsel. Counsel of record may not end an appeal by allowing its dismissal for lack of prosecution or end the representation of a client without taking affirmative action.

**B.    Proceedings Before the Southern District of New York**

In September 2010, the Committee on Grievances of the United States District Court for the Southern District of New York suspended Kulcsar from practice before that court, on an interim basis, based on his failure to cooperate in a pending investigation of his conduct in that court. *See In re Kulcsar*, M-2-238 (S.D.N.Y., order dated Sept. 24, 2010). The reasons for that investigation are not known to this Court. Thereafter, pursuant to this Court's reciprocal discipline rule, Second Cir. Local Rule 46.2(c)(2), this Court reciprocally suspended Kulcsar "upon such terms and conditions as set forth in" the Southern District's interim suspension order. *See In re Kulcsar*, 07-9020-am, order filed Nov. 16, 2010. Although this Court's reciprocal suspension was not to take effect for 28 days from the filing of this Court's order, to allow Kulcsar time to challenge it, Kulcsar did not move for the order to be stayed, modified or vacated. We

8

are informed that, as of February 15, 2011, the Southern District's interim suspension order remains in effect.

Since we are not aware of the Southern District's reasons for investigating Kulcsar, the conduct or allegations underlying that investigation are not now before this Court and are not a basis for the discipline we now impose. However, Kulcsar's failure to cooperate with the Southern District's disciplinary investigation is relevant to our present decision, since he has not denied that finding in response to this Court's reciprocal discipline order and the finding bears on whether Kulcsar will be able to comply in the future with this Court's rules and orders.

**III.  Conclusions**

We conclude that the Committee's factual findings, as supplemented by this decision, are fully supported by the record, and we agree that Kulcsar has violated, on numerous occasions, his professional duty of diligence. Although we acknowledge the Committee's finding that Kulcsar's lack of a disciplinary history constituted a mitigating factor, see Report at 16, that finding is now partly undermined by the Southern District's finding that Kulcsar has failed to cooperate with its disciplinary proceeding, which is of significant concern to us.

Additionally, we agree with the Committee that Kulcsar's pattern of misconduct, and failure to cure his communications problems even after becoming aware of them, are significant

9

aggravating factors. *See id.* at 15. Unfortunately, the situation is now worse, since, even after becoming aware of the present disciplinary proceedings, Kulcsar has continued to violate this Court's deadlines and orders, and has failed to resolve his long-standing communications issue. *See In re Miller*, 68 A.D.2d 544, 547-48 (1st Dep't 1979)("The fact that [the charged attorney] committed the present conversion knowing that he was under a charge of professional misconduct for the previous offense adds to the gravity of the instant infraction."). Moreover, his continued misconduct has not merely caused inconvenience to the Court – it has caused several criminal appeals, in which serious liberty interests were at stake, to be dismissed or unduly delayed. Even if we assume that none of Kulcsar's clients were prejudiced by his misconduct, the continuation of the misconduct discussed by the Committee is entirely unacceptable. We therefore conclude that the entirety of Kulcsar's misconduct, including his misconduct in this Court after having became aware of the issues addressed in these proceedings, warrants a sanction more substantial than a public reprimand. *See In re Flannery*, 186 F.3d 143, 145-49 (2d Cir. 1999).

Upon due consideration of the Committee's report, the underlying record, Kulcsar's submissions, and the additional appellate proceedings described above, it is hereby ORDERED that Kulcsar is both PUBLICLY REPRIMANDED and SUSPENDED from practice

10

before this Court for a period of six months. Additionally, upon expiration of that six-month suspension, Kulcsar is thereafter barred for an additional one-year period from representing litigants in this Court pursuant to the Criminal Justice Act. It is further ORDERED as follows:

(a) The six-month suspension period we now impose will (i) commence only upon expiration of the reciprocal suspension period imposed in this Court's November 16, 2010 order, and (ii) terminate only upon proof, submitted by Kulcsar to counsel for this panel, that the full six-month suspension period has been served consecutive to the termination of the interim suspension imposed by the Southern District of New York. The additional one-year bar on CJA representation will commence immediately after the six-month suspension has expired. We authorize counsel to this panel to certify Kulcsar's compliance with the requirements of this paragraph, without the need for further order of this panel.

(b) The one-year bar on CJA representation in this Court applies regardless of the court making the CJA appointment. If Kulcsar is mistakenly continued as CJA counsel in a future case in this Court during that period, he must promptly notify this Court of the need for substitution.

(c) Kulcsar must inform this panel of the determination reached by the Southern District of New York in its disciplinary proceedings, within twenty-eight days of the filing of the Southern District's final order.

(d) Kulcsar must disclose this order to all clients in cases currently pending in this Court and to all courts and bars of which he is currently a member, and as required by any bar or court rule or order. Kulcsar also must, within twenty-one days of the filing of this order, file an affidavit with this Court confirming that he has complied with the requirements set forth in this paragraph.

(e) Kulcsar must complete, within six months of the filing date of this order, six hours of Continuing

11

Legal Education ("CLE") on law office management, which must be taken in addition to, and not in fulfilment of, his regular CLE requirements. Kulcsar must submit information about proposed CLE courses directly to the Committee's secretary, who will inform him whether the Committee agrees that the proposed courses satisfy his obligation. Kulcsar must certify his completion of the required CLE courses by sworn statement filed with both this panel and the Committee's secretary within seven days after the end of the six-month period. The Committee may modify these deadlines, either on motion or *sua sponte*.

(f) Kulcsar must ensure that, during the pendency of any case in which he represents a party in this Court, the Court possesses a current telephone number for him which a person or recording machine will answer, and that his mail is timely brought to his attention.

(g) Kulcsar must comply with the reporting requirements described on pages 16 and 17 of the Committee's report.

The text of this panel's May 2007 and March 2008 orders and the Committee's report are appended to, and deemed part of, the present order for purposes of disclosure of this order by Kulcsar and the Clerk of Court. The Clerk of Court is directed to release this order to the public by posting it on this Court's web site and providing copies to members of the public in the same manner as all other unpublished decisions of this Court, and to serve a copy on Kulcsar, this Court's Committee on Admissions and Grievances, the attorney disciplinary committees for the New York State Appellate Division, First Department, the United States District Court for the Southern District of New York, and all other courts and jurisdictions to which this Court

12

distributes disciplinary decisions in the ordinary course.[2]

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk



By:  Michael Zachary
Counsel to the Grievance Panel

## APPENDIX 1

### Text of May 2007 order

For the reasons that follow, Roy R. Kulcsar is referred to this Court's Committee on Admissions and Grievances for investigation of his conduct before this Court and preparation of a report on whether he should be subject to disciplinary or other corrective measures.  See Second Circuit Local Rule 46(h). The description of Kulcsar's conduct appearing below is not intended as a complete overview of all the conduct and proceedings relevant to the Committee's proceedings.  The Committee is free, in the first instance, to fully investigate all of Kulcsar's conduct before the Court and reach its own conclusions on whether that conduct warrants any disciplinary or other corrective measures.

The records of this Court suggest that, in a number of appeals, Kulcsar has failed to abide by this Court's rules and orders, has failed to cooperate with this Court's personnel in the processing of appeals in which he was an attorney of record,

---

[2] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities.  While we request that all such documents remain confidential to the extent circumstances allow, we leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, must be made available to any person or the public.

and may have failed to protect the interests of his clients.

First, Kulcsar's inaction in four criminal appeals, in which he was counsel of record for the appellants, caused the dismissal of those appeals on default grounds. In United States v. Ramirez, No. 06-5583-cr, Kulcsar filed the notice of appeal but failed to either file an appellate brief, which was due by February 7, 2007, or request to be relieved as counsel. On February 13, 2007, the Court received a pro letter from the appellant himself, asking for the status of the case and for appointment of new counsel since, he states, Kulcsar had been retained only for the district court proceedings. The docket sheet reflects that the letter was forwarded to Kulcsar. The next docket sheet entry, on April 23, 2007, notes the entry of an order dismissing the appeal due to the appellant's failure to file a brief. In a separate letter written at the direction of Chief Judge Jacobs, also entered on April 23, 2007, Kulcsar was reminded of his obligation under Second Circuit Local Rule 4(b)(a) to continue representing the appellant until relieved by the Court, and was directed to file, within 20 days, either a brief and appendix or a stipulation withdrawing the appeal signed by his client, himself, and opposing counsel. The letter also required him to, inter alia, explain his conduct in the appeal. As of May 23, 2007, Kulcsar has not responded to this Court's April 23, 2007 letter, although the 20-day deadline expired on May 14, 2007.

Similarly, Kulcsar also defaulted on the briefing schedules in United States v. Vinasco (Montoya), No. 03-1064-cr, United States v. Cirineo (Lama), Nos. 02-1110-cr (L), 02-1248-cr (Con), and United States v. Williams, No. 97-1043-cr, resulting in the dismissal of his clients' appeals. In Vinasco (Montoya) and Cirineo (Lama), the default dismissals were entered only after Court employees telephoned Kulcsar about the defaults and the need to request an extension of time to file the briefs. There is no suggestion that Kulcsar responded in any way. In a recent criminal appeal, United States v. De La Cruz, No. 06-5878-cr, Kulcsar failed to file a brief by the due date provided in the scheduling order, February 28, 2007. Although the appeal has not yet been dismissed on default, the docket sheet reflects that the case manager attempted, in March, April and May, to notify Kulcsar about the overdue brief, but those telephone calls were neither answered by a person nor transferred to an automated answering system.

Kulcsar's conduct in United States v. Narvaez (Gamboa), No. 03-1786-cr, in which he was the attorney of record for Henry Gamboa, is also noteworthy. In that appeal, this Court issued a

14

scheduling order in January 2004, but Kulcsar failed to file his brief by the provided deadline, or by the new deadlines established in two subsequent orders granting him extensions of time. In fact, Kulcsar exceeded each of the deadlines without, prior to each deadline, offering an explanation or requesting additional time; instead, after each of those defaults, from May 2004 to January 2005, the Clerk's Office left messages for Kulcsar regarding his overdue brief. See docket entries for 5/19/04, 10/19/04, 1/27/05. In each instance, Kulcsar would eventually file a motion for an extension of time. The last order granting an extension noted that Kulcsar had had "more than enough time to file a brief in this long-pending appeal" and warned him that "[n]o further extensions will be granted." Id., Order filed Nov. 3, 2004 (Winter, J.). Kulcsar also failed to abide by that order; instead, four months after the deadline established in the November 2004 order, he file a brief and motion pursuant to Anders v. California, 386 U.S. 738 (1967). Kulcsar's motion for leave to file the Anders brief and motion late was granted. Id. at entries for 3/9/05 and 3/29/05.

However, in September 2005, Kulcsar informed the Clerk's Office that he intended to file, within one week, a motion to withdraw the Anders motion. Id., entry at 9/22/05. In October and November 2005, the Clerk's Office left messages for Kulcsar inquiring about the anticipated motion to withdraw the Anders motion. Id., entries at 10/20/05 and 11/1/05. At one point, we are informed, the case manager called Kulcsar's office three times a day for two days in the effort to reach him. Finally, in May 2006, Kulcsar informed the Clerk's Office that he wished to proceed with the Anders motion. Id., entry at 5/16/06. However, after it was determined that Kulcsar had not complied with this Court's Anders notice requirements, this Court ordered Kulcsar to do so. See id., Order filed June 9, 2006. Kulcsar failed to respond to the Court's order. Additionally, Kulcsar did not return messages left by the Clerk's Office. As a result, this Court denied Kulcsar's Anders motion, denied CJA fees for his work on the case and appointed new counsel for the appellant. See id., Order filed Aug. 15, 2006. That order stated, inter alia, the following:

On June 9, 2006, this Court ordered counsel to file, by June 23, 2006, an affidavit indicating that he has complied with this Court's Anders notice requirements. Counsel has not done so. Additionally, counsel has not responded to messages left by this Court's Clerk's Office. Appellant's appeal, pending since December 2003, has been prolonged due to counsel's repeated non-compliance with the briefing schedule and the

15

failure to respond to messages left by the Clerk's
Office.

> Given counsel's non-compliance with this Court`s prior
> order and continuing neglect of this case, it is
> ORDERED that the <u>Anders</u> motion is DENIED, Kulcsar is
> relieved as counsel, Kulcsar is denied his Criminal
> Justice Act fees for work on this case, and Gamboa
> shall be appointed new appellate counsel.

<u>Id.</u> (citations omitted).

The docket of this Court also reflects that, in still other
cases, Kulcsar has repeatedly filed motions for extensions of
time to file his appellate briefs, often as many as five times
in one case, accompanied by requests for leave to file the
extension motions out of time. <u>See</u> Nos. 04-2038-cr, 03-1751-cr,
03-1063-cr, 02-1406-cr, 02-1319-cr, 01-1387-cr, 01-1344-cr, 96-
1514-cr, 90-1015-cr. The docket sheets for those cases strongly
suggest that case managers often have difficulty reaching
Kulcsar and, in many instances, the case managers discovered
that Kulcsar's telephone perpetually rings without connecting to
an automated answering system. In one case, a case manager
voiced frustration at the apparent failure of Kulcsar's
receptionist to forward a message to him or transfer the call to
voicemail. <u>See</u> <u>United States v. Mena (Francisco)</u>, No. 04-0498-
cr, dkt. sht., entry at 5/10/05 (note).

Upon due consideration of the matters described above, it
is ORDERED that Roy R. Kulcsar is referred to this Court's
Committee on Admissions and Grievances for investigation and
preparation of a report, pursuant to Federal Rule of Appellate
Procedure 46, this Court's Local Rule 46(h), and the Rules of
the Committee on Admissions and Grievances.

                              FOR THE COURT:
                              Thomas Asreen, Acting Clerk
                              By:_____/s/_____
                                   Michael Zachary
                                   Supervisory Staff Attorney

16

# APPENDIX 2

## Text of March 2008 order

By order filed in May 2007, Roy R. Kulcsar was referred to this Court's Committee on Admissions and Grievances for investigation of the matters described in that order. Since that time, additional information regarding Kulcsar has come to the attention of this panel.

In 2007, Rafael Rodriguez filed suit against Kulscar in the United States District Court for the Southern District of New York, alleging that Kulscar had fraudulently induced Rodriguez to pursue a Federal Rule of Criminal Procedure 35 motion, and pay Kulcsar a retainer of $5,000 for his representation in the Rule 35 proceedings, by making representations Kulscar knew to be false concerning Rodriguez's likelihood of success on the motion. *See Rodriguez v. Kulcsar*, No. 07-cv-251, 2007 WL 3120906 (S.D.N.Y. Oct. 24, 2007)(decision dismissing action). The action was dismissed for lack of subject matter jurisdiction, *id.* at *3, and Rodriguez did not file a notice of appeal.

Since the alleged behavior occurred in the course of district court proceedings, we ask the Committee to determine, in the first instance, whether the alleged behavior relates in any way to the proceedings currently before the Committee or, if not, whether it should be referred to the disciplinary committee of the district court or of an appropriate state bar.

Upon due consideration, it is ORDERED that the additional information described above is referred to this Court's Committee on Admissions and Grievances for its consideration in conjunction with the information provided in this panel's May 2007 referral order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk
By:_____/s/_____
  Michael Zachary
  Supervisory Staff Attorney
  Counsel to the Grievance Panel

**March 2010 Report of the Committee
on Admissions and Grievances**

**Report & Recommendation
Re: In re Roy R. Kulcsar, 07-9020-am**

## I. Introduction

By Orders dated May 30, 2007, and March 10, 2008, the United States Court of Appeals for the Second Circuit (the "Court's Order") referred Roy R. Kulcsar to this Committee, for investigation of his conduct before the Court and preparation of a report on whether he should be subject to disciplinary or other corrective measures.

Kulcsar is an active federal criminal practitioner. He was referred to this Committee because the Court's records suggest that Kulcsar has failed to abide by this Court's rules and orders, has failed to cooperate with this Court's personnel in the processing of appeals in which he was an attorney of record, and may have failed to protect the interests of his clients.

In particular, the Court noted four criminal appeals that were dismissed for default. First, in *U.S. v. Ramirez*, 06-5583-cr, Kulcsar filed the notice of appeal but did not file the appellate brief by the due date. The Court then directed Kulcsar either to file the brief or to file a stipulation withdrawing the appeal, but Kulcsar did not respond to that order. In both *U.S. v. Vinasco (Montoya)*, 03-1064-cr, and *U.S. v. Cirineo (Lama)*, 02-1110-cr(L), 02-1248-cr (Con), Kulcsar defaulted on the briefing schedules. Court employees telephoned Kulcsar about the overdue briefs. Kulcsar either could not be reached or did not respond to the phone calls, and both cases were dismissed. Lastly, in *U.S. v. Williams*, 97-1043-cr, Kulcsar also failed to file the brief on time, and the case was dismissed.

At the time of the referral, Kulcsar had also defaulted on a fifth case: In *U.S. v. De La Cruz*, 06-5878-cr, the case manager called Kulcsar's office in March, April, and May 2007 about

1

the overdue brief, but there was no answer to those calls. The appeal was dismissed on May 25, 2007.

In a sixth case, the Court expressed concern about repeated missed deadlines. In *U.S. v. Narvaez (Gamboa)*, 03-1786-cr, Kulcsar was granted two extensions of time, even though he did not move for additional time until after the deadline had passed and the Clerk's office left him messages about the brief. The final order on November 3, 2004, stated that no further extensions would be granted, but Kulcsar still did not file the brief until four months after that final deadline, along with an *Anders* motion. Kulcsar then informed the Court that he intended to withdraw the *Anders* motion, but despite multiple messages from the clerk's office, he did not do so. He finally informed the Court in May 2006 that he intended to proceed with the *Anders* motion, but he had not complied with the notice requirements. Again, Kulcsar did not respond to the Court's order. As a result, the *Anders* motion was denied, Kulcsar was denied his CJA fees, and new counsel was appointed.

Also, the Court expressed concern about repeated extensions of time to file appellate briefs, often as many as five times in one case. In addition, the docket sheets reflect repeated unsuccessful attempts to reach Kulcsar, many times without even being able to reach an answering machine to leave a message.

Finally, in the March 10, 2008, referral, the Court noted that Rafael Rodriguez sued Kulcsar in the U.S. District Court, claiming Kulcsar had fraudulently induced him to pursue a Rule 35 motion by making false representations about the likelihood of success. The action was dismissed for lack of subject matter jurisdiction, but the Court has asked the Committee to determine if the behavior relates to any of the previous behavior or should be referred to another disciplinary committee.

The Committee recommends that Kulcsar be publicly reprimanded. In addition, Kulcsar should be directed to ensure that at all times he represents a party in pending matter before the Court, the Court is provided with a current telephone number at which a person or recording machine will answer during any time the Court is open for business and that his mail is timely brought to his attention. Further, Kulcsar should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or filed out of time; (2) an extension of time is requested; (3) an application is made for permission to make a late filing only after the due date has passed; or (4) a telephone message from the Court is not returned within three business days. The following constitutes the Committee's report and recommendation to impose discipline on Kulcsar.

2

## II.    The Disciplinary Proceeding

On March 21, 2008, this Committee issued an Order to Show Cause regarding Kulcsar's conduct as alleged in the Court's referral order.  Kulcsar did not respond, so the Committee sent a second letter on April 30, giving him until May 13 to respond.  On May 21, 2008, Kulcsar wrote the Committee asking for an additional 60 days to respond, stating that he had just received the Committee's mail because of a problem with receiving the mail at his office.  The Committee granted him 30 additional days until June 20, 2008, and noted that no further extensions would be granted.  On June 20, 2008, Kulcsar faxed a request for an additional thirty day extension; the Committee agreed to an additional ten days.  On June 30, 2008, Kulcsar called and asked to submit his response by email after 5:00 pm; this request was granted.  The Committee finally received a written response to the Order to Show Cause by fax on July 2, 2008.

On November 7, 2008, Kulcsar's attorney, Jeffrey C. Hoffman, Esq. submitted pre-hearing documentation to the Committee and additional materials on November 12.  A hearing was held on November 18, 2008 by a sub-committee consisting of Paul Curnin, Terry Connors, and Eileen Blackwood.  Patrick Shilling was also present for the sub-committee, and Kulcsar appeared with his counsel.  At the hearing, Kulcsar's counsel indicated he did not wish to file a post-hearing submission, but on Dec. 17, 2008, Kulcsar called the Committee and requested permission to file additional materials by January 7, 2009.  This request was granted, but when no materials were received, on February 2, 2009, the Committee wrote Attorney Hoffman that no additional materials would be accepted after February 6.  Kulcsar submitted a final statement on February 5, 2009.

## III.    Factual Background

The following facts are taken from court records, Kulcsar's written submissions, and the testimony presented at the hearing.

Mr. Kulcsar is an experienced federal criminal defense practitioner.  He graduated from St. John's College Law School and was admitted to practice law in New York State in September 1968.  He was admitted to practice before this Court in 1969, the Southern and Eastern Districts in 1970, and the U.S. Supreme Court in 1971.  He began his career as an assistant district attorney in the New York County District Attorney's Office where he worked for about nine years before entering private practice.

Mr. Kulcsar reports a caseload of 35-40 active cases, with 98% of his clients incarcerated at either the Metropolitan Correctional Center or the Metropolitan Detention Center.  Most of his clients are Hispanic, so he works with a Spanish-speaking paralegal who also serves as an interpreter.  Kulcsar spends his entire work day either at the correctional or detention centers or in court.  Only after 5:00 pm does he have the opportunity to check phone messages or mail, as cell phones are not allowed in either federal facility or the court.  He served on the CJA panel for

3

many years and has been appointed to handle some fairly high profile cases, including that of Ramzi Yousef, the World Trade Center bomber, and of Jose Muyet, the leader of the Nasty Boys accused of drug trafficking.

Mr. Kulcsar has never been disciplined for professional misconduct.

## IV. Legal Standard

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"),

> An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office, or the rules of professional conduct of any other state or jurisdiction governing the attorney's conduct. An attorney also may be subject to discipline or other corrective measures for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; *see also* F.R.A.P. 46(c) ("a court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule").

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re Snyder,* 472 U.S. 634, 645, 105 S.Ct 2874, 2881 (1985).

Because Kulcsar is a member of the bar of New York State during the time period at issue, the New York State Code of Professional Responsibility ("the Code") also applies. Two sections are of particular relevance in this matter. First, the Code states that a lawyer shall not "[n]eglect a legal matter entrusted to the lawyer." See D.R. 6-101(A)(3); 22 N.Y.C.R.R. § 1200.30(A)(3); *see also* N.Y. Rules of Prof'l Conduct R. 1.3(b) (effective Apr. 1, 2009) (hereinafter "N.Y.R."). Second, the Code prohibits conduct that "adversely reflects on the lawyer's fitness as a lawyer." D.R. 1-102(A)(7); 22 N.Y.C.R.R. § 1200.3(A)(7); *see also* N.Y.R. 8.4(h).

4

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004); *Matter of Rabinowitz*, 596 N.Y.S.2d 398, 402 (N.Y. App. Div. 1993). This conduct is also sanctionable under the ABA Standards for Imposing Lawyer Sanctions ("ABA Standards"), which call for a range of sanctions for various forms of "lack of diligence" and "lack of competence."

Relevant to this matter are rules promulgated by the Court for appointed counsel. "Counsel appointed under the Act to represent a CJA client in the district court shall continue such representation on appeal unless or until relieved by order of the Court of Appeals. . . . If CJA counsel who acted in the district court wishes to be relieved from representing a CJA client on appeal, he or she shall file with the Clerk of the Court of Appeals, and serve upon a CJA client and all other counsel in the case, a motion seeking to be relieved and stating the grounds in support of the motion. Counsel seeking to be relieved nevertheless shall continue to represent the CJA client on appeal unless or until relieved by the Court of Appeals (See Local Rule 4(b))." Amended Plan to Implement the Civil Justice Act of 1964 VIII A & B (as amended Dec. 12, 2007)(hereafter CJA Rules). "CJA counsel shall not delegate any non-ministerial tasks in connection with representation of a CJA client to any person other than a partner, associate, paralegal, student or regular employee of the law firm or clinical program of which the Panel member is a partner, associate or affiliate without the written consent of the CJA client and the Court." CJA Rules Section IX F.

According to this Committee's rules, "[a]ny finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h). If an attorney is found to have engaged in misconduct, this Committee should consider (a) the duty violated, (b) the lawyer's mental state, (c) the actual or potential injury caused, and (d) the existence of aggravating or mitigating factors. See ABA Standards section 3.0. The Committee then may recommend to the Court's Grievance Panel a range of sanctions from removal from the bar of the Court, suspension from practice before the Court, public or private reprimanded, referral to another disciplinary committee, supervision of a special master, counseling or treatment, or other disciplinary or corrective measures, including any combination of these actions. Committee Rule 6(a)-(i).

## V. The Alleged Misconduct

### A. Failure to Abide by Orders and Cooperate with Court Personnel

The Court has noted several cases in which Kulcsar claims not to have received notices and in which he has failed to respond repeatedly to calls from the Court's staff. Kulcsar attributes these problems to issues he was having with his office.

5

For about nine years, Kulcsar entered into an arrangement with an attorney named Louis Venezia to sub-let office space. Kulcsar rented one room for his exclusive use, shared a conference room, and used Venezia's phone system and receptionist. Kulcsar had no employees and no answering service or machine at his office location, but he occasionally hired Venezia's receptionist or secretaries to perform administrative tasks for him. The paralegal who works with Kulcsar, handles his correspondence and maintains his files. Kulcsar does not maintain one client file but instead has client documents separated by type: He maintains discovery and motions, while his paralegal maintains correspondence and other documents she prepares on his behalf. Venezia's receptionist would take messages from Kulcsar and ensure that he got his mail; he spoke with her almost every day.

Sometime in late 2005, Venezia's long-time receptionist quit, and things started downhill for Kulcsar. At the end of 2006, Kulcsar learned from a friend that Venezia was relinquishing his space. At the time, Kulcsar was in the middle of a multi-defendant RICO trial, *U.S. v. Perrone,* and when he returned to the office after the trial, he discovered that Venezia had already left, and all of Kulcsar's things had been moved into an empty room. Relations with Venezia had deteriorated, and Venezia brought suit to evict Kulcsar. The new tenants refused to give him any commitment about renewing an arrangement such as he had had with Venezia. He eventually worked out an arrangement with them to allow him use of the office and to continue receiving his mail there. For a time, his mail was kept in a location with the mail for about fifteen other lawyers, but now it is separated out and kept in a location just for him. Also, for some period in early 2007, Kulcsar was not receiving his phone messages because unbeknownst to him, his phone was not hooked up to the new office suite phone system and was not answered.

Although Kulcsar represented that the problems with his mail and telephone only occurred between November 2006 and May 2007, it is notable that he also claims he did not receive this Committee's Order to Show Cause one year later, in March 2008. In addition, regardless of the mail problem, in one of the cases at issue here, *U.S. v. Ramirez,* the record shows electronic notice to Kulcsar that the index in lieu of record on appeal was being sent to this Court, yet Kulcsar did not respond to that electronic notice.

### (i)     *U.S.A. v. Ramirez, 06-5583*

Kulcsar had represented Ramirez at trial before the district court, where he was convicted. A notice of appeal was filed on Ramirez's behalf on December 5, 2006. The notice of appeal identifies Roy Kulcsar as counsel for appellant and is signed by Kulcsar. The Court issued scheduling order #1 on December 18, 2006, but Kulcsar claims he never received it. Kulcsar did not file the brief when due on February 7, 2007. On February 13, 2007, Kulcsar's client sent the Court a *pro se* letter and a Motion to Withdrawal [sic] Counsel of Record and for Appointment of Counsel. In it, he asserts that Kulcsar was not representing him on the appeal and requests appointed counsel. The Court sent that letter to Kulcsar, but he did not respond and never filed a brief. On April 23, 2007, the case was dismissed for failure to comply with the

6

scheduling order. Kulcsar asserts he did not receive this communication from the Court either. He did finally receive a phone message from the staff attorney that there had been a default, and sometime in May 2007 found the dismissal order. He did not immediately move to reinstate the appeal.

In October, the client moved *pro se* to reinstate the appeal. That motion was granted on January 23, 2008, and new counsel was appointed under the CJA. The new counsel filed an *Anders* brief to be relieved as counsel, and the government moved to dismiss the appeal or affirm the conviction. On October 20, 2008, the appeal as to imprisonment was dismissed and the conviction and other portions of the sentence were affirmed. Thus, other than the delay, the client appears to have suffered no actual injury from Kulcsar's default.

### Kulcsar's Response to *Ramirez*

Kulcsar testified that he never intended to represent Ramirez on appeal, just to file the notice of appeal for him *pro se* to preserve his right in case he obtained other counsel. This is supported by his client's letters to the Court, which indicate that Kulcsar refused to represent Ramirez on appeal. Kulcsar claims that when he attempted to file the appeal *pro se*, the Court would not allow him to do so, but required him to file it listing himself as counsel. Kulcsar testified that he understood that under the Court's rules if the client wanted to appeal, he had to file it, even if the client had waived his right to appeal in his plea (as he had here).

Kulcsar admits that he did nothing further on the case after filing the appeal. He never opened a file, started tracking the case, prepared a brief, or took any other action in relation to his client because he understood that other counsel was to be hired. He was dealing with Ramirez's family on an ongoing basis, and no one ever raised the issue of the appeal with him again.

At the time (between December 2006 and May 2007), Kulcsar claims he did not realize he was not getting mail from this Court.

### (ii) *U.S.A. v. Vinasco et al. (Montoya), 03-1064*

Montoya was the lead defendant in a narcotics trafficking charge. Represented by Kulcsar, she pled guilty in the district court, and the plea agreement included a waiver of appeal. She then sought to appeal because she had not realized that the plea agreement would not allow the judge to grant her a downward departure from the sentencing guidelines. Montoya sent several letters to the court, which the district court judge finally recognized as notices of appeal, *pro se,* and the case was received by this Court in February 2003. Because Kulcsar was the attorney of record below, under the Court's rules, he was counsel of record on the appeal, and a scheduling order was sent to him on February 28, 2003. Kulcsar filed a motion to extend time to file the opening brief on April 22, 2003, the day after the brief was due. This motion was granted on April 28, 2003, with a caveat that "NO FURTHER EXTENSIONS WILL BE GRANTED

ABSENT EXTRAORDINARY CIRCUMSTANCES." The Court's staff called Kulcsar to inquire what was happening, but he did not respond. On August 25, 2003, the appeal was dismissed for failure to comply with the scheduling order. The appeal was never reinstated.

### Kulcsar's Response to *Montoya*

Kulcsar asserts that after filing the appeal, he delivered his file to another attorney to handle the appeal, but the Court has no record of any other attorney on the matter. Kulcsar admits that he did receive copies of the Court's order, but he claims he had no involvement with the appeal. He asserts that he never received a message from the Court's staff and has no explanation for why that may have happened (the problems with his office staff outlined above occurred four years later).

### (iii)    *U.S.A. v. Cirineo (Lama), 02-1248 (CON)*

Kulcsar represented Lama as trial counsel in a multi-defendant case. Lama was convicted and appealed. Kulcsar filed a notice of appeal on April 24, 2002. A scheduling order was issued on May 10, 2002, but no brief was filed. The Court's staff called Kulcsar, but he did not respond. The appeal was dismissed on Oct. 23, 2002, for failure to comply with the scheduling order. There is no record that the appeal was reinstated.

Lama's co-defendant Cirineo, 02-1110, changed attorneys, and argued the merits of the appeal before the Court, and the judgment of the district court was affirmed.

### Kulcsar's Response to *Lama*

Kulcsar asserts that he did not pursue the appeal after filing because Lama was deported, so the case became moot. There is no evidence that he communicated this fact to the Court. He had no explanation for why he did not respond to communications from the Court's staff.

### (iv)    *U.S.A. v. Williams,* 97-1043

Kulcsar represented Williams at a bail hearing in the district court. Bail was denied, and he appealed the bail denial in January 1997. Meanwhile, Kulcsar became involved in the *Muyet* trial mentioned above and new counsel was appointed for Williams in the district court. A telephone call from the Court's staff to Kulcsar's office and a written notice requiring him to file documents from the district court proceeding went unanswered. The bail appeal languished. In May 1997, new counsel was appointed for Williams, and Kulcsar delivered the file to him. Williams's case went forward in the district court with new counsel.

8

Williams was tried and convicted in June 1997. On August 19, 1997, the Court apparently issued a scheduling order on the bail appeal. A follow-up letter was sent from the Court's staff to Kulcsar dated September 19, 1997, which he asserts he passed on to Williams's counsel because he was then involved in the *Muyet* trial. Both the scheduling order and the Court staff's follow-up letter went unanswered. New counsel did not enter an appearance on the appeal. No brief was filed, and the appeal was dismissed on October 28, 1997. Kulcsar received this dismissal and spoke to the Court's staff, asserting the appeal was moot. An Order to Show Cause was apparently issued by the Court. Kulcsar obtained an extension of time to respond to it but did not respond on February 2, 1998, and it appears nothing further occurred.

Although Williams was tried and convicted, the Committee has no evidence about whether the bail appeal would have been successful, had it been properly pursued.

### Kulcsar's Response to Williams

Kulcsar asserts that substitute counsel took over the case (although this did not occur until four months after the bail appeal had been filed) and that he did not receive a call from the Court's staff with the notice to file documents. He was busy with the *Muyet* trial but has no explanation for why he did not pursue the bail appeal or ensure that substitute counsel was in place in a timely fashion.

### (v)      *U.S. v. De La Cruz*, 06-5878

Kulcsar represented De La Cruz before the district court, where he pled guilty and waived appeal. On October 17, 2006, De La Cruz filed a pro se appeal, and Kulcsar claims he did not receive a copy of that appeal. Kulcsar was the attorney of record below, and thus the Court automatically cited him as appellate counsel. On January 9, 2007, a scheduling order was filed and sent to Kulcsar. He denies receiving it. When the appellant's brief was not filed by February 28, as noticed, the Court wrote to Kulcsar, and the Court's staff attempted to call him in March, April, and May. These communications were not answered. The appeal was dismissed on May 25, 2007. No request for reinstatement has been filed.

### Kulcsar's Response to *De La Cruz*

Kulcsar asserts that he did not receive the scheduling order in January 2007, the Court's letters or phone calls in March, April, and May, or the notice of dismissal of appeal dated May 25, 2007. He states that he was not even aware that De La Cruz had appealed.

### (vi)     *U.S. v. Narvaez (Gamboa)*, 03-1786

Kulcsar represented Gamboa on sentencing, after conviction, before the district court. On December 24, 2003, he filed a notice of appeal to this Court. The Court subsequently

9

appointed Kulcsar CJA counsel for Gamboa. A scheduling order was filed on January 8, 2004. A motion to withdraw as counsel and extend time was denied by the Court on February 19, 2004, subject to renewal upon submission of a completed financial affidavit. The Court's staff left Kulcsar a message on May 19 about the overdue brief, but he did not respond. On June 4, 2004, another motion for an extension of time was filed, although the brief had been due on February 27. On June 15, 2004, after re-filing, Kulcsar was appointed under the CJA, and the time to file his brief was extended to October 3. The Court left Kulcsar a message on October 19 about the overdue brief. He did not file the brief, but on October 27 filed another motion to extend time. On November 3, 2004, the Court extended the time for fourteen days, stating, "Counsel has had more than enough time to file a brief in this long-pending appeal. No further extensions will be granted."

Despite this order, Kulcsar did not file the brief, even after the Court's staff called him again on January 27, 2005. Nor did he respond to the call. In fact, the index in lieu of record on appeal was not filed until March 7, 2005, and an *Anders* brief, along with a motion for permission to file out of time, was finally filed on March 9. The motion to file out of time was granted, but in September 2005, Kulcsar notified the Court's staff he wished to withdraw the *Anders* motion. In October and November, the Court's staff left him messages inquiring about the withdrawal, but he did not respond. At one point, the case manager called his office three times a day for two days. Finally, in May 2006, he told the Court's staff he would proceed with the *Anders* motion, but on June 9, 2006, the Court entered an order refusing to decide the case until Kulcsar furnished his client with a copy of the brief, explained to him the consequences of the filing, advised him that he could request other counsel, and filed an affidavit affirming that he had complied with these requirements. The Court's staff left Kulcsar messages about the Court's requirements, but Kulcsar did not respond. On August 15, 2006, the Court noted, "Appellant's appeal, pending since December 2003, has been prolonged due to counsel's repeated non-compliance with the briefing schedule and the failure to respond to messages left by the Court's staff. Given counsel's non-compliance with this Court's order and continuing neglect of this case, it is ORDERED that the Anders motion is DENIED...." Kulcsar was removed as counsel and denied his CJA fees. New counsel was appointed for Gamboa on September 5, 2006, and an *Anders* brief was filed on November 16, 2006. The case was summarily affirmed on February 26, 2007.

## Kulcsar's Response to *Gamboa*

At the request of Gamboa's family, he filed an appeal, even though he believed there were no grounds for the appeal. He retained another attorney, Steve Legon, to handle the appeal although Kulcsar remained attorney of record. Legon apparently requested numerous extensions, and when Kulcsar spoke to him, Legon allegedly assured him that the appeal was on track. Kulcsar has worked with Legon many times over the years. Legon subsequently told him the Court had lost their brief. In reality, Legon apparently failed to file an affidavit documenting the

10

client's knowledge, so the *Anders* brief was rejected. The affidavit was never filed, so the Court assigned new counsel and denied Legon's and Kulcsar's request for CJA fees.

Kulcsar admits receiving multiple calls from the Court's staff about the case, but asserts that he contacted Legon each time. Kulcsar explains that Legon assured him that he, Legon, would take care of the matter. Kulcsar does admit responsibility for not ensuring that the communication occurred more clearly. He does not explain why he did not respond to the Court.

## B.     Filing Multiple Requests for Extensions of Time

In a number of cases over the years, Kulcsar has repeatedly filed motions for extensions of time to file his appellate briefs, often after the brief was due with a request for leave to file the extension motion out of time.

In 96-1514, the appeal was filed on August 6, 1996, and Kulcsar filed a motion to extend time on September 20, and this was granted. On October 23, 1996, he filed a second motion to extend time, seven days before the brief was due, and this motion was granted. On November 19, 1996, he filed a third motion to extend time because the case was to be consolidated with another case. That motion was granted. On December 3, 1996, a fourth motion to extend time, this one out of time, was filed and granted. A fifth motion was filed on December 23 and was granted with the condition that no further extensions would be allowed. The brief was finally filed, one day late.

Kulcsar then began to seek extensions of time to file his reply brief. The first was filed, out of time, on March 10, 1997. A second motion was filed on March 24. A third request was filed on April 7, five days out of time. A fourth request was filed on April 15. A fifth request was filed on April 21, again out of time. A sixth request was filed on April 28, the day the brief was due, and seventh request, out of time, on May 2. An eighth request was filed on May 8 and a ninth motion on May 13, out of time  All nine requests were granted. The reply brief was finally filed on May 16, 1997. Oral argument was waived, and the judgment of the district court was affirmed on July 25, 1997.

In 01-1344 the appeal was filed on July 11, 2001. The appellant's brief was due on September 10, 2001, but requests for extensions of time were requested on September 7, October 25, November 29, January 3 (2002), February 20, and March 29. All were granted. On April 19, 2002, the Court docket notes that a brief was filed out of time (it was due April 8). A motion for leave to file out of time was filed later on May 1, 2002. It was granted. The judgment of the district court was affirmed on April 24, 2003.

In 01-1387, the appeal was filed on July 17, 2001. Appellant's brief was due on September 19. Motions to extend time were then filed on September 26 and October 18. The

11

brief was then filed on November 19, 2001, the day it was due. The judgment of the district court was affirmed on March 29, 2002.

In 02-1319, the appeal was filed on May 24, 2002. Motions for extension of time were filed on September 26, November 18, February 18 (2003), March 21 (after Court order stating no further extensions), and April 14. Kulcsar filed the brief on May 23, 2003, even though it was due April 21. The brief was not accepted until he filed a motion for leave to file out of time, which was done on May 24, 2003, and the brief was ultimately accepted.

During this time, it appears that some of Kulcsar's client's co-defendants sought extensions, but none on the scale that Kulcsar sought—for example, defendants Martinez and Ramirez each sought one extension. The government also sought three extensions, and then filed its brief on time. This case was then held, awaiting the Supreme Court decisions in *Booker* and *Fanfan.*

In 02-1406, the appeal was filed on July 11, 2002, and the docket sheet does not show any requests for extension. The case was held once the U.S. Supreme Court granted certiorari in *Booker* and *Fanfan,* until those decisions were issued.

In 03-1063, which was referenced in the Referral Order, Kulcsar was not the counsel of record.

In 03-1751, the government filed an appeal, and Kulcsar filed a cross-appeal. He made motions for extensions to file the brief on June 8, 2004 and August 27, but the brief was not filed until February 16, 2005, two months after the extended deadline.

In 04-2038, Kulcsar filed a motion to extend time on June 18, 2004, and the court granted it with the condition that no further extensions would be granted. Despite that order, Kulcsar failed to file the brief on time, but filed another request for extension on October 27, more than two months after the brief was due. Another extension was filed on December 28, and the brief was finally filed on January 11, 2005. The district court's judgment was affirmed and the case remanded on April 28, 2005.

### Kulcsar's Response

Kulcsar claims requests for extensions out of time are routinely filed and have always been granted, and that the filing of requests to file out of time has also been routine in the Court. He also asserts that in cases with multiple co-defendants extensions are more likely because other defendants are filing motions as well. However, as noted above, the number of Kulcsar's filings seems to exceed that by other counsel. Additionally, Kulcsar explains that two of the cases, 04-2038 and 03-1751, were awaiting U. S. Supreme Court decisions in *Booker* and *Fanfan.* Yet, those cases appear to have multiple requests for extensions even before the Supreme Court

12

accepted certiorari. On two other cases, 96-1514 and 01-1387, Kulcsar claims another attorney was handling the appeal; however, the docket is clear that Kulcsar was the attorney of record.

## C.   Client Claim of Fraudulent Inducement: *Rodriguez v. Kulcsar*

In 2007, Rodriguez filed suit against Kulcsar in the Southern District of New York, alleging that Kulcsar fraudulently induced him to pursue a Rule 35 motion and pay him $5000. This action was dismissed for lack of subject matter jurisdiction, and the Committee was asked to determine if Kulcsar's behavior in that action relates to the current proceedings.

### Kulcsar's Response

All proceedings in the case occurred before the district court. Rodriguez was convicted after trial and asked Kulcsar to negotiate a Rule 35 cooperation agreement to reduce his sentence. Kulcsar tried to no avail. They had already spoken to Rodriguez and not only knew the information he had to offer, but did not believe he was entirely truthful with them. Kulcsar testified that he met with the client at least ten times, met and spoke with the AUSA numerous times, and fully earned his fee of $5000. The matter seems to be a straight fee dispute, with nothing relevant to the issues of timeliness.

## D.   Kulcsar's General Response to the Charges

Kulcsar readily admits his errors for the most part and expresses remorse. Before this panel, Kulcsar asserts that his problems began with the conjunction of a very busy practice, problems with his office setting, and personal problems. **[REDACTED SENTENCE]** His practice requires him to be out of the office all day, meeting with clients at correctional facilities or attending court.

Kulcsar apologizes and expresses remorse for not communicating well and causing the Court inconvenience. He has taken steps to rectify his office situation. He practices primarily out of his house, but he uses the same office suite in New York City that he has used for years. A new office manager there ensures his mail is delivered to him in a timely manner. She calls him promptly if anything urgent happens. Kulcsar goes to the office every few days. He has also made sure that the Court, his clients, and other jurisdictions in which he appears have his cell phone listed, as well as fax and email. His paralegal regularly checks his email and faxes any important documents home to him.

13

## VI. Disciplinary Action is Warranted

### A. Duty Violated

The evidence demonstrates, clearly and convincingly, that Kulcsar has engaged in professional misconduct. This misconduct includes the following:

Kulcsar failed to abide by court deadlines, resulting in dismissals of at least six cases— *Ramirez, Montoya, Lama, Williams, De La Cruz, and Gamboa*-- in violation of his duty of diligence . To make matters worse, Kulcsar failed to respond to communications from the Court on numerous occasions, as recently as communications from this Committee in spring 2008 in violation of his duties to the legal system and the profession. In all of the cases above, Court staff tried to call Kulcsar repeatedly to remind him of his obligations and find out when documents would be filed, and he totally ignored these communications. In several of these cases, Kulcsar asserts he did not receive Court orders or letters. Although Kulcsar claims that most of these problems arose from a change in management of the suite where he maintains an office, the evidence does not support that contention as the explanation for all of his defaults. The instances in which Kulcsar claims he did not receive messages of mail range from January 1997 in the *Williams* case to May 2008, with this Committee's communications, while the office change of ownership occurred in late 2006-early 2007. It is clear to the Committee that Kulcsar's communication problem is more than just a brief interlude caused by the changeover in office management.

In numerous other cases, Kulcsar repeatedly sought extensions of time in violation of his duty of diligence—as many as nine on one reply brief in 1997, although the quantity of requested extensions has declined in recent years. More concerning is that even with extensions, many of Kulcsar's briefs were filed out of time. Kulcsar's claim that these extensions are tied to the actions of co-defendants does not seem to be supported in the record.[1]

Additionally, Kulcsar has violated the Court's CJA rules, which provide that counsel appointed in the district court shall continue until relieved by order of this Court. Appointed counsel are required to file a motion before the Court of Appeals to be relieved and must continue representing the client until the motion is granted. Instead, Kulcsar delegated tasks to a non-employee in violation of the CJA rule that prohibits CJA counsel from delegating tasks to anyone other than an employee of the firm. In *Gamboa,* Kulcsar testified that he retained Steve Legon, who was not an employee of his firm, to handle the matter, and despite receiving multiple calls from the Court about the matter, Kulcsar failed to ensure that the matter was properly handled. The situation exemplifies the reason why the Court prohibits delegation to non-

---

[1] Two of the cases cited by the Court, 02-14-6 and 03-1063, do not establish any basis for misconduct.

14

employees, as Kulcsar claims Legon promised to respond to the Court's contacts but apparently did not, and the Court was left with no response to its attempts to contact the assigned attorney.

The Committee does not find that any disciplinary action should be taken with respect to *Rodriguez v. Kulcsar*. The matter appears to involve a fee dispute between the client and attorney, involving matters entirely before the district court. It also does not seem to implicate the matters of dilatoriness and failure to communicate apparent before this Court.

### B. The Lawyer's Mental State

The misconduct appears to be due to negligence rather than any intentional or knowing conduct. The Committee found no evidence that Kulcsar intentionally intended to ignore the Court's orders or violate Court rules.

### C. The Actual or Potential Injury

Of the cases cited by the Court in its order, six resulted in the appeal being dismissed because of Kulcsar's inaction. In all of them, the clients suffered potential injury, but the Committee cannot find by clear and convincing evidence that they suffered actual harm. For example, in *Williams,* Kulcsar filed an appeal of a bail denial, but failed to pursue the appeal. The client was eventually convicted of his crime, and the Committee has no evidence whether or not the bail appeal would have been successful, had it been zealously pursued. In two of the remaining cases, *Ramirez* and *Gamboa,* the appeals were reinstated, and substitute counsel filed *Anders* briefs; in both, the convictions were affirmed. In two others, *Montoya* and *De La Cruz,* the client's appeal was dismissed and never reinstated. In both cases, the client had filed the appeal *pro se,* and after the appeal was dismissed, the client apparently did not seek reinstatement. In addition, in both cases, the client had pled guilty and waived appeal in the plea. As a result, the Committee is reluctant to conclude there was actual injury. In *Lama,* the appeal was dismissed and never reinstated, but Kulcsar testified that the client was deported before the appeal was dismissed. Again, the Committee cannot conclude on this record that the client suffered actual harm.

In all of the other cases referred to this Committee, Kulcsar's late filings were accepted by the Court.

### D. Aggravating and Mitigating Factors

The pattern of conduct-- failing to meet deadlines, failing to apply for an extension before the deadline has passed, failing to respond to the Court's communications, and failing to follow the CJA rules—is a strong aggravating factor. Kulcsar is an experienced practitioner, and despite becoming aware of the problems with communications from his office setting over the years, it

15

does not appear that he has made significant changes in his operations to ensure receipt of messages and communications.

In mitigation, Kulcsar has a challenging practice, which requires him to be out of the office most of the day. His personal life includes significant challenges. He has never been disciplined in forty years of practice. He appears to be well-respected in the district courts, as he has been appointed to represent defendants in some high-profile and difficult cases. No evidence exists that Kulcsar engaged in any of the behavior above because of any personal gain or intention to fail in his duty to his client. Finally, Kulcsar sincerely expressed remorse.

## VI. Recommendation

The Committee finds, based on clear and convincing evidence, that Kulcsar has violated his duty of diligence to his clients, as well as his duties to the legal system and the profession, by neglecting legal matters entrusted to him and failing to respond to the Court, and concludes that discipline is warranted. Kulcsar should be publicly reprimanded for his conduct.

The Committee also recommends that Kulcsar be directed to ensure that at all times he represents a party in pending matter before the Court, the Court is provided with a current telephone number at which a person or recording machine will answer during any time the Court is open for business and that his mail is timely brought to his attention. Further, Kulcsar should be required, in connection with his practice in any federal court in the Second Circuit or in any federal administrative agency whose action is subject to the Second Circuit's review, to submit to the Committee sworn statements identifying under oath each and every instance during each of the four reporting periods described below in which (1) a submission is not filed or filed out of time; (2) an extension of time is requested; (3) an application is made for permission to make a late filing only after the due date has passed; or (4) a telephone message from the Court is not returned within three business days. It is expected that these reports will show no such instances absent exigent circumstance, which circumstances should be attested to under oath in the respective report.

In the event that Court staff attempts to contact Kulcsar and no answer or response occurs within three business days, a report is not timely filed, or a report reveals deficiencies not justified by exigent circumstance, the Committee may recommend the imposition of additional discipline, including but not limited to suspension from the Second Circuit, without hearing further testimony.

The following reporting periods and deadlines shall be observed. The report for each reporting period shall be mailed to the Committee Secretary within ten (10) days of the end of that reporting period. The first reporting period shall commence 10 days after the Committee's recommendation is mailed to Kulcsar and shall end six months after the Second Circuit issues its order of disposition in this matter. Each of the three subsequent reporting period shall be for a

16

reporting period commencing at the end of the prior reporting and ending six months later. A total of four reports will be prepared and mailed to the Committee Secretary.